IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DEAN FOLTZ                              )
Individually And On Behalf Of           )
All Others,                             )
                                        )
Plaintiffs                              )
                                        )      Case No.: 14-cv04308-NKL
vs.                                     )
                                        )      JURY TRIAL DEMANDED
GUITAR CENTER STORES, INC.              )
                                        )
Defendant                               )


# MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
# FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

The Parties to this lawsuit, Plaintiff Dean Foltz (the "Named Plaintiff" or "Foltz") and Defendant Guitar Center Stores, Inc. ("Defendant" or "Guitar Center"), by and through their respective counsel and pursuant to the terms of the Parties' Settlement Agreement, respectfully seek final approval of the settlement of this Fair Credit Reporting Act litigation (the "Settlement"). The Named Plaintiff alleges, on behalf of himself and all other similarly-situated individuals, that Defendant violated the Fair Credit Reporting Act (the "FCRA") by utilizing an improper disclosure and authorization form in violation of Section §1681b(b)(2)(A)(i)(ii). Defendant denies all liability.

After the exchange of informal discovery, the Parties enlisted John Phillips of Kansas City, a well-respected and nationally recognized mediator with substantial experience in mediating class actions, to help them resolve their dispute. On

1

February 24, 2015, the Parties attended a day-long mediation with the mediator. While the Parties were unable to reach an agreement at the mediation they agreed to continue negotiations. On April 13, 2015, after extensive arm's-length negotiations the Parties reached an agreement on the terms of a class settlement. As described more fully below, the agreed upon settlement called for Defendant to make available a total settlement fund of $122,855.00 to the settlement class, which amount was inclusive of attorneys' fees and costs, settlement administration expenses, an incentive payment to Named Plaintiff, and payments to Class Members.

On July 10, 2015, the Court entered an Order granting preliminary approval of the Settlement. [*See* Dkt. 41]. Defendant provided the names and contact information for the Class Members to Simpluris, Inc. who subsequently mailed Notices. [*See* Decl. of Stephen Gomez, Exhibit 1, ¶¶ 8-9].

Following the Court's grant of preliminary approval, the Parties and their settlement administrator have complied with all of the requirements of the Settlement Agreement. For these reasons and for the reasons which are set forth more fully below, the Parties respectfully request that the Court enter an order granting final approval of the Settlement.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Named Plaintiff's Claims

Plaintiff filed this lawsuit on October 16, 2014, in the Circuit Court of Cole County, Missouri. On November 26, 2014, Defendant removed the case to the United States District Court for the Western District of Missouri. The parties exchanged limited informal discovery prior to mediation. The Named Plaintiff alleges, on behalf of himself and all other similarly-situated individuals, that Defendant violated the FCRA by utilizing an improper disclosure and authorization form in violation of Section §1681b(b)(2)(A)(i)(ii). [*See generally* Dkt. 35].

### B. Discovery and Damages Analysis

This Settlement is the result of arms-length negotiations based on a thorough investigation of the facts and the law by experienced counsel. Prior to the mediation, the Parties engaged in an initial round of discovery. Defendants provided additional informal discovery as part of the mediation. Class Counsel and counsel for Defendant have thoroughly studied the applicable legal principles and are confident that they have sufficiently investigated the key factual issues applicable to the claims that the Named Plaintiff has raised.

### C. The Mediation, Preliminary Approval, and Notice to the Settlement Class

The Parties retained as their private mediator John Phillips of Husch Blackwell in Kansas City, Missouri, who is a well-respected and nationally recognized mediator with substantial experience in mediating class action litigation. In preparation for the mediation session, the Parties spoke with the mediator on multiple occasions and submitted to him their confidential mediation memoranda.

On February 24, 2015, the Parties attended a day-long mediation with the mediator. While the Parties were unable to reach an agreement at the mediation they agreed to continue negotiations. On April 13, 2015, after extensive arm's-length negotiations the Parties reached an agreement on the terms of a class settlement. The Parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement.

The Parties subsequently filed their Joint Motion for Preliminary Approval of Class Action Settlement. [*See generally* Dkt. 40]. On July 10, 2015, the Court granted the Parties' Joint Motion, preliminarily approved the settlement, and directed that notice be sent to the Settlement Class. [*See* Dkt. 41].

3

Case 2:14-cv-04308-NKL   Document 45-1   Filed 12/09/15   Page 3 of 11

On September 4, 2015, the parties' Settlement Administrator, Simpluris, Inc., mailed 3,393 Court-approved Notices based on a class list which Defendant provided containing the addresses that the Class Members used when they applied for employment with Defendant. [*See* Decl. of Stephen Gomez. Attached hereto as Exhibit 1]. Approximately 439 of the initial 3,393 mailings were returned as undeliverable; which was not surprising given the transient nature of the work force in today's society and the fact that although Class Members applied for employment with Defendant, some of them did not actually work for Defendant. Simpluris then ran a skip-trace and re-mailed the Class Notice. Of the 3,393 Notices mailed, no Class Member objected to the Settlement and only six Class Members elected to opt out of the Settlement.

**D.     Terms of the Proposed Settlement**

The basic terms of the Parties' settlement are as follows:

1.   Guitar Center will make available to the Class Members a total fund of One Hundred Twenty-Two Thousand Eight Hundred Fifty-Five Dollars and No Cents ($122,855.00) ("Settlement Fund") to settle the claims of all members of the Settlement Class, inclusive of (a) all individual payments to the Plaintiff and Class Members; (b) attorneys' fees of Forty Thousand Five Hundred Fifty-Two Dollars and No Cents ($40,552.00), which is thirty-three percent (33%) of the Settlement Fund; (c) an Incentive Award to Plaintiff in the amount of Five Thousand Dollars and No Cents ($5,000.00), or such other amount as the Court may approve; and (d) the costs and fees incurred by the Settlement Administrator, which the Parties estimate to be approximately $20,000.

2.   All Class Members will be mailed a settlement check. The amount to be paid to each

Class Member is calculated as follows: (a) the $122,855.00 Settlement Fund will be subject to deductions for the court-approved amounts for attorneys' fees and costs, the Incentive Award to Plaintiff, and the costs and fees incurred by the Settlement Administrator, and (b) the remaining amount after the deductions will be evenly divided between each member of the Settlement Class. Net payments after deductions will be approximately Sixteen Dollars and Ninety Two Cents ($16.92) for each Class Member.

3. The settlement requires that a check be issued to each Class Member who does not opt-out of the Class. As described in the Settlement Agreement, Class Members including the Named Plaintiff, pursuant to the Class Action Settlement Agreement, have agreed to release all claims relating to any background check conducted by Defendant.

4. All Class Members will be sent settlement checks and will have 90 days to cash them. Any uncashed settlement checks will revert to the Settlement Fund and the amount of the uncashed checks will revert to Guitar Center, within 30 days of the expiration of the 90-day period within which Class Members must cash their settlement checks.

5. Should any settlement checks be returned as undeliverable, the Settlement Administrator will run a skip trace in an attempt to locate the missing Class Members. The sum of any checks that are thereafter returned as undeliverable after the attempt

to negotiate the missing class members shall be distributed to U.S. Committee for Refugees and Immigrants.

6. Subject to the approval of the Court, the Named Plaintiff will receive an Enhancement Payment of $5,000. As part of the settlement terms, the Named Plaintiff provided a general release of all claims.

7. Subject to the approval of the Court, Class Counsel seeks an award of attorneys' fees in an amount of one-third of the Settlement Fund, or $40,552.00.

8. Subject to the approval of the Court, the settlement will provide for the costs and fees incurred by the Settlement Administrator, which the Parties estimate to be approximately $20,000.

### III.   DISCUSSION

When the parties to a class action lawsuit propose to settle their case, the district court will review the settlement under Rule 23 to ensure that it is fair, reasonable, and adequate. *Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005). "The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on 'well-reasoned conclusions' and is not 'mere boilerplate.'" *Wireless Tel.*, 396 F.3d at 932-33. The Eighth

Circuit has explained that district courts should consider four factors when they review proposed settlements to ensure that they are fair, reasonable, and adequate:

1. The merits of the plaintiff's case, weighed against the terms of the settlement;
2. The defendant's financial condition;
3. The complexity and expense of further litigation; and
4. The amount of opposition to the settlement.

*Wireless Tel.*, 396 F.3d at 932.

These four factors – applied to the facts and circumstances of this case – demonstrate that the Settlement is in fact fair and equitable and the Court should grant the Parties' Joint Motion for Final Approval of Class Action Settlement.

**A.  The Merits of the Named Plaintiff's Claims, Weighed Against the Terms of the Settlement (Factor 1) Suggests that the Settlement is Fair, Reasonable, and Adequate.**

In this case, Defendant has agreed to fund a gross Settlement Amount of $122,855.00 to the potential settlement class of 3,387 individuals in total. Given the legal and factual disputes in this case, Class Counsel believes that the amount of these payments – and the Settlement over all – is an excellent result in light of the relative merits of the Named Plaintiff's claims. Simply put, this is not a case where the parties agree that the defendant is liable to the plaintiff and where the determination of the extent of the plaintiff's damages is the crux of the litigation. Rather, the Parties to this lawsuit dispute *both* liability and damages. Among other things, the Named Plaintiff would have to prove that any alleged FCRA violations were willful, in order to recover any available statutory damages. Defendant claims that it did not violate the provisions of the FCRA and that even if the Court did find a violation, Defendant's actions were done in good faith and do not amount to a willful violation. In short, whether or not the members of the Settlement Class would recover *anything* at trial is far from clear. *Cf. Wireless Tel.*, 396 F.3d at

7

933 (concluding that the "merits" factor weighed in favor of approval because "the outcome of the litigation would be far from certain"). As a result, the "merits" factor weighs in favor of approving the Settlement.

B.  **The Defendant's Financial Condition (Factor 2) Suggests that the Settlement is Fair, Reasonable, and Adequate.**

Defendant has the financial resources to pay the settlement amount. As a result, the "financial condition" factor weighs in favor of approving the Settlement. *Cf. Wireless Tel.*, 396 F.3d at 933 (concluding that the "financial condition" factor weighed in favor of approval because there was "no indication that [the defendant's] financial condition would prevent it from raising the settlement amount").

C.  **The Expected Complexity and Expense of Further Litigation (Factor 3) Suggests that the Settlement is Fair, Reasonable, and Adequate.**

Prior to engaging in mediation, the Named Plaintiff served discovery requests on Defendant, and Defendant produced company policies, documents, and interrogatory answers in response to those requests. Class Counsel reviewed and analyzed those responses and thoroughly reviewed and analyzed similar claims and available settlement information. Thus, heading into the mediation, both Parties had a reasoned understanding of what they stood to gain – and what they stood to lose – if the case continued to be litigated and perhaps left to a jury to decide.

Both Parties recognized, though, that FCRA cases are complex and time-consuming by nature. Both Parties also recognized that the members of the Settlement Classes might not recover anything at all. Additionally, both Parties recognized that the risks that are inherent in all lawsuits are likely to be greater in this particular lawsuit because very few FCRA class action cases have been litigated on their merits and this case is likely to entail complex (potentially class litigation-defeating) procedural and damages issues.

8

Finally, both Parties recognized that, if the case did not settle, years of expensive and time-consuming litigation would be potentially necessary before a determination could be made regarding whether or not the members of the Settlement Classes were entitled to recover anything. Indeed, if the mediation had failed, the Parties would likely have had to depose multiple fact and expert witnesses; and would have needed to research, prepare, file, respond to, reply to, and potentially argue motions related to class certification, discovery and summary judgment. At the time of the filing of the Motion for Preliminary Approval, Class Counsel had already spent a substantial amount of time on the case. It is reasonable to assume that both Parties would spend a far greater amount of time and money on the case going forward if it were to proceed to trial. And the appeal that would surely follow any summary judgment ruling and/or any judgment obtained at trial would further delay any possible recovery to the settlement Class Members.

In sum, the Settlement is fair, reasonable, and adequate in light of the complexity and potential expense of further litigation. The immediate recovery that the Settlement provides is preferable to the possibility of recovering a greater amount of money at some unknown point in the future. *Cf. Wireless Tel.*, 396 F.3d at 933 (finding that a settlement was in the best interest of the class because, "barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all while class members would receive nothing'"). As a result, the "complexity and expense" factor weighs in favor of approving the Settlement.

**D.     The Lack of Opposition to the Settlement (Factor 4) Suggests that the Settlement is Fair, Reasonable, and Adequate.**

Class Counsel has years of experience litigating collective and class action lawsuits, and their years of experience led them to settle this lawsuit under the terms of the Settlement Agreement because they believe those terms to be fair, reasonable, and adequate. *See DeBoer v.*

9

*Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (finding that the fact that "class counsel [wa]s experienced in this type of litigation" weighed in favor of approval because class counsel could recognize a fair settlement when he saw one). Additionally, the Parties only decided to settle after they had engaged in a full day of intense mediation with the assistance of an experienced and respected mediator. The participation of a neutral facilitator, and the adversarial nature of those negotiations, demonstrate that this case was resolved and settled only after sufficient arms-length bargaining. *See DeBoer*, 64 F.3d at 1178 (finding that the act of engaging a neutral third party to preside over settlement negotiations suggested that the settlement was fair). This is not a case that was settled for a pittance shortly after it was filed. It was filed on October 16, 2014, and Class Counsel has moved with it from one judicial district to another. *Cf. Vollmer v. Publishers Clearing House*, 248 F.3d 698, 707 (7th Cir. 2001) (suggesting that the fact that a class action settles soon after the start of litigation may indicate collusion); *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 631 F. Supp. 2d 1151, 1156 (D. Minn. 2009) (same). Additionally, the release of claims by Class Members, except the Named Plaintiff, is limited to those claims that were or could be asserted in the Amended Complaint.

These facts attest to the fairness, reasonableness, and adequacy of the Settlement. Furthermore, the fact that that no one in the Settlement Classes has objected to the Settlement, and there has not been a significant number of members of the Settlement Classes that have opted out, likewise suggests that the Settlement is fair and equitable. [*See* Decl. of Stephen Gomez, Exhibit 1, ¶ 11-12]. As a result, the "amount of opposition" factor weighs in favor of approving the Settlement. *Cf. Wireless Tel.*, 396 F.3d at 933 (concluding that the "amount of opposition" factor weighed in favor of approval because the "silent majority" of the class had

accepted the settlement as fair by reason of their silence); *DeBoer*, 64 F.3d at 1178 (finding that the absence of objections weighed in favor of approval).

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Parties' memorandum previously filed in support of preliminary approval of the Settlement, Named Plaintiff Dean Foltz and Defendant Guitar Center Stores, Inc. respectfully request that this Court enter an Order finally approving the Parties' Settlement and authorizing payment from the Settlement Fund as set forth in the Settlement Agreement.

                Respectfully submitted,

                /s/ C. Jason Brown
                C. Jason Brown, MO 49952
                **BROWN & ASSOCIATES, LLC**
                301 South U.S. 169 Hwy
                Gower, MO  64454
                Telephone:  816-505-4529
                Facsimile:  816-424-1337
                Email:  brown@brownandwatkins.com
                Attorneys for Plaintiffs

                By: /s/ Karen K. Cain
                Karen K. Cain MO 47420
                LITTLER MENDELSON, P.C.
                1201 Walnut Street, Suite 1450
                Kansas City, MO  64106
                Tel: 816-627-4419
                Fax: 816-627-4444
                kcain@littler.com

                ATTORNEYS FOR DEFENDANT